UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LORING JUSTICE, *individually and as Next of Friend of N.N./N.J., a minor*, </br></br> *Plaintiff*, </br></br> v. </br></br> CECILIA PETERSEN and PETERSEN AND HIGGINS, </br></br> *Defendants.* | No.: 3:21-CV-28 </br></br> Judge Curtis L. Collier </br> Magistrate Judge Debra C. Poplin |

## **M E M O R A N D U M**

Before the Court is a motion to dismiss for failure to state a claim by Defendants, Cecilia Petersen and Petersen and Higgins. (Doc. 10.) Plaintiff, Loring Justice, has responded in opposition (Doc. 17), and Defendants have filed a reply (Doc. 18). For the reasons below, the Court will **GRANT** Defendants' motion (Doc. 10).

**I.  BACKGROUND**

The following summary of the facts accepts all factual allegations in Plaintiff's Complaint (Doc. 1) as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Plaintiff and Kim Nelson have a son, "N," together. Plaintiff and Nelson have been in litigation in state court over custody and visitation of N since at least 2004. This case arises from the alleged conduct of Defendants while they represented Nelson in the litigation's appellate proceedings.

### A. The State-Court Custody Case – Trial Proceedings

The most recent state-court custody case between Plaintiff and Nelson began in or around 2012. During the trial proceedings, Nelson was represented by David Valone, Martha Meares, Paul Dillard, and their respective law firms (collectively, "the trial attorneys").

The custody dispute was scheduled for trial in August 2016, and the parties engaged in settlement negotiations until the hours leading up to trial. During those negotiations, Nelson and the trial attorneys offered Plaintiff unsupervised parenting time with N if Plaintiff paid them $400,000. Plaintiff agreed. A proposed settlement order incorporated the agreed-upon terms, describing the $400,000 as $200,000 for attorney fees and $200,000 in child-support arrearages, although no arrearages were outstanding. The trial was postponed due to the settlement negotiations. On August 14, 2016, at the trial attorneys' request, Plaintiff furnished a $200,000 cashier's check to see N unsupervised. Plaintiff was able to see N unsupervised for a short time until the settlement negotiations broke down.

The case went to trial in early 2017. Nelson and the trial attorneys maintained that Plaintiff should not be permitted to have unsupervised parenting time with N, although this position conflicted with both the previous offer of unsupervised parenting time and the terms of the proposed settlement order. On the last day of trial, March 29, 2017, the trial attorneys submitted affidavits in support of a request for attorney fees, which contained duplicative entries and entries for work not directly related to the dispute and requested costs not recoverable under Tennessee law. At the conclusion of trial, Nelson was awarded full custody of N.

### B. The State-Court Custody Case – Appellate Proceedings

Plaintiff appealed the state court's decision to the Tennessee Court of Appeals. In or around June 2017, Defendants began representing Nelson in the appellate proceedings.[1] Defendants were aware of Nelson's and the trial attorneys' allegedly extortionate and fraudulent behavior but still defended those actions. At oral argument before the Tennessee Court of Appeals, Defendant Petersen admitted Nelson and the trial attorneys were involved in a scheme to extort Plaintiff for money in exchange for parenting time with N.

The Tennessee Court of Appeals awarded Nelson appellate attorney fees. Nelson and the trial attorneys then filed a petition for appellate attorney fees in the trial court. In support of the petition, Defendant Petersen filed two affidavits, both of which included duplicative or entirely fraudulent entries.

On January 23 and 24, 2020, the trial court held a hearing on Nelson's petition for appellate attorney fees. Defendant Petersen submitted two statements for services at the hearing, but several tasks listed in the statements of services were duplications or could not have occurred. Defendant Petersen also testified at the hearing. She testified that she charged $300 per hour but did not charge clients for clerical tasks, although her statements of services included fees for several clerical tasks like loading a van. The trial attorneys knew parts of Defendant Petersen's affidavits, submissions, and testimony were false.

The trial court awarded $150,000 in appellate attorney fees to Nelson based, at least in part, on Defendant Petersen's submissions and testimony. Defendants, along with Nelson and the trial attorneys, conspired to submit these false attorney fees in an effort to extract money from Plaintiff.

---

[1] Plaintiff does not allege when Defendants' representation of Nelson began, but based on the allegations regarding Defendants' time entries, it appears their representation began, at the latest, on June 22, 2017. (*See* Doc. 1 ¶ 34.)

3

### C. Plaintiff's Federal Lawsuits

Plaintiff has filed two lawsuits related to the state-court trial and appellate proceedings.

First, on May 21, 2019, Plaintiff filed a lawsuit against Nelson and the trial attorneys. Complaint, Justice v. Nelson, et al., No. 3:19-CV-185 (E.D. Tenn. May 21, 2019), ECF No. 1. The Court has since dismissed all of Plaintiff's claims in this first lawsuit. Memorandum & Order, Justice v. Nelson, et al., No. 3:19-CV-185 (E.D. Tenn. November 24, 2020), ECF Nos. 56–57; Memorandum & Judgment Order, Justice v. Nelson, et al., No. 3:19-CV-185 (E.D. Tenn. July 27, 2021), ECF Nos. 65–66.

Second, on January 25, 2021, Plaintiff filed this lawsuit against Defendants. (Doc. 1.) The Complaint asserts eight counts: (1) extortion, attempted extortion, and conspiracy to commit extortion; (2) intentional infliction of emotional distress; (3) civil conspiracy; (4) coercion; (5) abuse of process and conspiracy to abuse process; (6) fraud and conspiracy to commit fraud; (7) blackmail and conspiracy to commit blackmail; and (8) civil remedies under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.* ¶¶ 272–467.)

Defendants move to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on two grounds. (Doc. 10.) First, Defendants argue the claims against them should be dismissed under the *Rooker-Feldman* doctrine because the case is a collateral attack on the state court's award of appellate attorney fees. (*Id.* at 23.) Second, they assert Plaintiff's claims should be dismissed for failure to state a claim for relief. (*See generally id.*)

Plaintiff has filed a response in opposition to Defendants' motion. (Doc. 17.) Plaintiff asserts the *Rooker-Feldman* doctrine does not apply and explains how he has stated a claim upon which relief can be granted for each claim against Defendants.[2] (*See generally id.*)

## II. STANDARD OF REVIEW

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court first must accept all factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). All ambiguities must be resolved in the plaintiff's favor. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577 (6th Cir. 1992)). Bare legal conclusions, however, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After assuming the veracity of factual allegations and construing ambiguities in the plaintiff's favor, the Court then must determine whether those allegations "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Sufficient factual allegations are pleaded when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint states a plausible claim on its face, a court must "draw on its judicial experience and common sense." *See id.* at 679.

---

[2] Plaintiff also argues Defendants had independent duties to him. (Doc. 17 at 5, 15–19.) However, it is unclear to which claims this argument refers or relates, and the existence of independent duties is not an element of any of Plaintiff's claims. Additionally, Plaintiff argues the litigation privilege does not bar his claims. (*Id.* at 10–15 .) Defendants have not raised the litigation privilege as grounds for dismissal, so the Court need not address it.

5

**III.    DISCUSSION**

The Court first will address Defendants' argument for blanket dismissal based on the *Rooker-Feldman* doctrine and then will analyze Plaintiff's individual causes of action.

    **A.**    ***Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine arises from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  In *Rooker*, the Supreme Court agreed with a federal court's decision to decline to exercise jurisdiction over a petition requesting a state-court judgment be declared null and void. 263 U.S. at 414–15.  The Supreme Court explained:

> [I]t was the province and duty of the state courts to decide [the constitutional questions]; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.
> . . .
> [N]o court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character.

*Id.* at 415–16.  In *Feldman*, a district court had declined to review a state court's decision on bar-admission matters.  460 U.S. at 463.  The Supreme Court agreed with the district court's interpretation of its jurisdictional reach, finding "the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings." *See id.* at 476.

Together, *Rooker* and *Feldman* stand for the proposition that federal district courts cannot review claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced . . . ." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986) (internal quotations omitted) ("A United States district court has no

6

authority to review final judgments of a state court in judicial proceedings. . . . This is true, even though the state court judgment may have been erroneous."). To determine whether the *Rooker-Feldman* doctrine applies, a court must look to "the source of the injury" alleged. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*

Defendants argue Plaintiff's claims hinge on the award of appellate attorney fees and essentially seeks to revisit this decision, thereby triggering the *Rooker-Feldman* doctrine. (Doc. 10 at 23.) Defendants note Plaintiff seeks damages for the amount of appellate attorney fees awarded to Nelson. (*Id.*) In response, Plaintiff asserts the doctrine does not apply because his claims do not implicate the merits of the state-court decisions, including the award of appellate attorney fees, but rather the conduct and proceedings leading to those decisions and the award. (Doc. 17 at 1–2.)

Plaintiff seeks $2,000,000 in compensatory damages, while the award of appellate attorney fees was only $150,000. Indeed, Plaintiff may have considered the amount of the award before filing his Complaint, but he does not ask the Court to evaluate or reverse the award of attorney fees by the state court. Rather, Plaintiff's allegations and claims center on Defendants' conduct during the appellate proceedings of the state-court dispute. As a result, the source of the injury is not the state-court decision, and the *Rooker-Feldman* doctrine does not bar the Court from deciding this matter.

7

The Court next considers whether Plaintiff's specific causes of action state claims on which relief can be granted. The Court begins with Plaintiff's federal causes of action under civil RICO and then considers Plaintiff's state-law claims.

### B. Civil Rico Claims

RICO criminalizes conducting business through a pattern of racketeering activities and provides a civil cause of action for individuals injured by racketeering activity. 18 U.S.C. §§ 1962, 1964. While RICO "is a criminal statute, an injured party can bring a civil RICO claim against parties who violate any subsection of § 1962." *Courser v. Mich. H.R.*, 831 F. App'x 161, 185 (6th Cir. 2020).

Plaintiff has asserted RICO claims under both § 1962(c), which addresses a pattern of racketeering activity, and § 1962(d), which addresses a RICO conspiracy. (Doc 1 ¶¶ 367–467.) The Court will consider the two subsections in turn.

#### 1. 18 U.S.C. § 1962(c)

Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

Defendants argue Plaintiff has failed to allege any of the four elements of a § 1962(c) claim. (Doc. 10 at 13–22.) The Court need only address the first element, conduct, as Plaintiff's RICO claim fails on that ground. *See Moon*, 465 F.3d at 723.

8

Regarding conduct, the Supreme Court has interpreted the language of § 1962(c) to adopt the "operation or management test." *See Reves v. Ernst & Young*, 507 U.S. 170, 179–83 (1993). The operation-or-management test establishes that "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183. Sufficient conduct requires more than aiding and abetting, *id.* at 178–79, and, instead, involves "some part in directing [the enterprise's] affairs." *Id.* at 179.

Plaintiff's allegations of Defendants' participation in the enterprise concern Defendants' representation of Nelson on appeal (*see, e.g.*, Doc. 1 ¶¶ 11, 187–91, 221, 275, 315, 330–31) and Defendants' fraudulent requests for attorney fees (*see, e.g.*, *id.* ¶¶ 12–16, 25–158, 254–61). Defendants argue these allegations do not satisfy the operation-or-management test for two reasons: (1) an attorney's representation does not satisfy the test; and (2) even so, there are no allegations that Defendants directed the enterprise's affairs. (Doc. 10 at 14–16.) Plaintiff did not respond to either argument. (*See* Doc. 17 at 6–8.) The Court finds merit in both arguments.

First, "[c]ourts agree that the provision of traditional legal services does not constitute the 'operation or management' of an enterprise for purposes of RICO liability." *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-993, 2011 WL 2118072, at *13 (S.D. Ohio May 27, 2011); *see also Novel v. Zapor*, No. 2:14-cv-264, 2016 WL 6603291, at *6 (S.D. Ohio Mar. 22, 2016) ("All of Plaintiff's alleged actions amount to nothing more than conducting the attorney's own affairs (or the affairs of their clients), and these allegations do not satisfy the operation or management test."). Plaintiff's allegations that Defendants represented and defended Nelson's and the trial attorneys' actions during the appellate proceedings therefore do not show conduct sufficient to meet the operation-or-management test.

9

Second, even considering the allegations related to Defendants' representation of Nelson, the Complaint still does not satisfy the operation-or-management test. As an initial matter, several of Plaintiff's relevant allegations regarding conduct are merely bare legal conclusions that Defendants "agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs." (Doc. 1 ¶ 455; *see also id.* ¶ 379.) The Court need not and does not accept such allegations as true. *See Papasan*, 478 U.S. at 286. In addition, Plaintiff's factual allegations do not show Defendants directed the enterprise's affairs. Although Plaintiff alleges Defendant Petersen "knowingly engaged in or aided and abetted the Enterprise's racketeering activities" (Doc. 1 ¶ 379), aiding and abetting is insufficient to demonstrate conduct. *See Reves*, 507 U.S. at 179. In addition, Plaintiff alleges Defendants were aware of Nelson's and the trial attorneys' extortionate and improper conduct. (Doc. 1 ¶¶ 330–31.) But Defendants' awareness does not show operation or management, as Plaintiff still has not alleged Defendants "knowingly carr[ied] out the *orders* of the enterprise." *See Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012) (emphasis added); *see also Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 855–56 (S.D. Ohio 2020) (quoting *Ouwinga*, 694 F.3d at 792) ("The Sixth Circuit has also explained that 'directing' 'can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out.'").

Even viewing the Complaint in the light most favorable to Plaintiff, there are no allegations that Defendants directed the enterprise's affairs, made decisions for it, knowingly carried out its orders, or otherwise participated in the operation or management of the enterprise. Instead, Plaintiff's allegations merely show involvement, which is insufficient. *See, e.g., Penn*, 2011 WL

2118072, at *12. Because Defendants' conduct does not meet the operation-or-management test, Defendants cannot be liable under § 1962(c).³

As Plaintiff fails to allege the first necessary element, Plaintiff's RICO claim under 18 U.S.C. § 1962(c) will be **DISMISSED WITH PREJUDICE**. The Court turns next to Plaintiff's claim under 18 U.S.C. § 1962(d), alleging a RICO conspiracy.

### 2. 18 U.S.C. § 1962(d)

Section 1962(d) makes it unlawful for any person to conspire to violate subsections (a) through (c) of the RICO statute. 18 U.S.C. § 1962(d). However, a RICO conspiracy claim fails if the underlying RICO claims fail. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990) (holding the "[p]laintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts"). Accordingly, Plaintiff's RICO conspiracy claim fails based on the Court's dismissal of his underlying RICO claims. *See supra* § III(B)(1). Thus, the Court will **DISMISS WITH PREJUDICE** Plaintiff's 18 U.S.C. § 1962(d) claim.

The Court has now addressed and dismissed all of Plaintiff's federal claims.

### C. State-Law Claims

Plaintiff's only remaining claims are state-law claims.⁴ Plaintiff's claims were brought pursuant to 28 U.S.C. §§ 1331 and 1367. (Doc. 1 ¶ 5.) As there is no diversity of citizenship

---

³ *Reves* noted two instances in which low-level participants in the enterprise still might operate the enterprise. *See* 507 U.S. at 184. Neither situation applies here. First, low-level associates participate in the operation of the enterprise when they "are under the direction of upper management." *Id.* Second, associates of the enterprise may participate when they "exert control over it as, for example, by bribery." *Id.* There are no allegations that Defendants were under the direction of or bribed Nelson or the trial attorneys.

⁴ Plaintiff's state-law claims include: (1) extortion, attempted extortion, and conspiracy to commit extortion (Doc. 1 ¶¶ 272–79); (2) intentional infliction of emotional distress (*id.* ¶¶ 280–306); (3) conspiracy (*id.* ¶¶ 307–14); (4) coercion (*id.* ¶¶ 315–17); (5) abuse of process and

11

between the parties, (*see id.* ¶¶ 1–3), the Court has subject matter jurisdiction over Plaintiff's state-law claims only if supplemental jurisdiction exists. *See* 28 U.S.C. § 1367(a). Supplemental jurisdiction exists if a claim "form[s] part of the same case or controversy under Article III of the United States Constitution" as the claim over which the Court has original jurisdiction. *Id.* "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (quoting *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454–55 (6th Cir. 1996)).

Plaintiff's state-law claims derive from a common nucleus of operative facts as Plaintiff's jurisdiction-invoking claims, but even if a claim satisfies this prerequisite, the exercise of supplemental jurisdiction is discretionary. A district court may decline to exercise supplemental jurisdiction over a claim in the following circumstances:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In deciding whether to exercise supplemental jurisdiction over a claim, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

The third rationale of § 1367(c) applies here because the Court has dismissed all of Plaintiff's claims against Defendants over which it had original jurisdiction. *See supra* § III(B). When all federal claims have been dismissed, the preferred disposition of state-law claims is

---

conspiracy to commit abuse of process (*id.* ¶¶ 318–48); (6) fraud and conspiracy to commit fraud (*id.* ¶¶ 349–60); and (7) blackmail and conspiracy to commit blackmail (*id.* ¶¶ 361–66).

dismissal, or, where a case has come into federal court on removal, remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010). A federal district court should only exercise its discretion to retain supplemental jurisdiction after dismissing federal claims under limited circumstances, which frequently involve some degree of forum manipulation. *See Carnegie-Mellon Univ.*, 484 U.S. at 357. There is neither an indication of manipulative tactics nor another compelling reason for the Court to exercise supplemental jurisdiction over Plaintiff's state-law claims.

The Court declines to exercise subject matter jurisdiction over Plaintiff's remaining state-law claims, so those claims will be **DISMISSED WITHOUT PREJUDICE**. *See Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) ("[D]ismissals for lack of jurisdiction should generally be made without prejudice."). As a result, Plaintiff has no claims remaining in this lawsuit.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss (Doc. 10). The Court will **DISMISS WITH PREJUDICE** Plaintiff's federal claims against Defendants and **DISMISS WITHOUT PREJUDICE** Plaintiff's state-law claims against Defendants.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE

---

[5] Once in his response, Plaintiff states the appropriate remedy "would be amendment, not dismissal, at this early stage." (Doc. 17 at 8.) Plaintiff, however, has not asked the Court for permission to amend his complaint, so the Court therefore will not provide him leave to do so. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). He not only failed to file a motion to amend, but also has not "attach[ed] a copy of the proposed amended pleading to the motion," which "may be grounds for denial of the motion." *See* E.D. Tenn. L.R. 15.1. Plaintiff also neither identified how he would amend his Complaint nor demonstrated why amendment would not be futile. *See Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).